**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:18-CR-17** |
| | ) | **JUDGE JORDAN** |
| **ROBERT JESSEE ESTES** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE**

---

Comes now the defendant, Robert Jessee Estes, by and through counsel, and files this Memorandum in Support of his Motion for Downward Variance and respectfully requests the Court consider the following:

1. **District Courts are entitled to vary downward from the guidelines based upon a policy disagreement with those guidelines**.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court instructed district courts to read the Sentencing Guidelines as effectively advisory, serving as õone factor among several courts must consider in determining an appropriate sentence.ö *United States v. Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *1 (W.D. Virginia August 5, 2019), citing *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). While õthe Guidelines should be the starting point and initial benchmarkö of the sentencing process, and must be considered as a factor in sentencing, they õare not the only consideration.ö *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *1 (W.D. Virginia August 5, 2019), citing *Gall v. United States*, 552 U.S. 38, 49 (2005). After calculating the Guidelines range and allowing argument, õthe district court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.

In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at \*1 (W.D. Virginia August 5, 2019), citing *Gall* at 49-50. In *Spears v. United States*, 555 U.S. 261, 265-66 (2009), the Supreme Court clarified its holding in *Kimbrough*, holding that "district courts are entitled to reject and vary categorically from the" Guidelines based upon a policy disagreement with those Guidelines." *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at \*1 (W.D. Virginia August 5, 2019).

2. **The current guidelines are greater than necessary to adequately reflect the seriousness of the offense**.

For most drug offenses, the base offense level reflects the type and quantity of drug(s) involved. However, unlike other controlled substances, the United States Sentencing Guidelines has drawn a distinction between mixture methamphetamine and actual (and ice) methamphetamine. While mixture methamphetamine and actual (and ice) methamphetamine are different formulations of the same drug, they are treated very differently in the guidelines, with the penalties being ten (10) times greater for actual (and ice) methamphetamine. (USSG § 2D1.1, comment. n.8 (D) (setting a marijuana equivalency of 2 kilograms for each gram of mixture methamphetamine but 20 kilograms for each gram of actual (and ice) methamphetamine).

The 10:1 punishment ratio between mixture methamphetamine and actual (and ice) methamphetamine does not rest upon empirical evidence, but rather on the Sentencing Commission's faulty assumption that drug purity is an accurate measure of a defendant's relative status within a drug distribution network. An application note entitled "Upward Departure Based on Unusually High Purity" sets forth the following rationale:

> Trafficking in controlled substances, compounds, or mixtures of unusually
> high purity may warrant an upward departure, except in the case of PCP,

2

amphetamine, methamphetamine, hydrocodone, or oxycodone for which the guideline itself provides for the consideration of purity (see the footnote to the Drug Quantity Table). The purity of the controlled substance, particularly in the case of heroin, may be relevant in the sentencing process because it is probative of the defendant's role or position in the chain of distribution. Since controlled substances are often diluted and combined with other substances as they pass down the chain of distribution, the fact that a defendant is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs. As large quantities are normally associated with high purities, this factor is particularly relevant where smaller quantities are involved. U.S.S.G. § 2D1.1, comment n.27(C).

In *United States v. Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *1 (W.D. Virginia August 5, 2019), the district court granted a motion for a downward variance in part because of the court's policy disagreement with the Guidelines' treatment of offenses involving actual/pure methamphetamine. In its Memorandum Opinion, the *Moreno* court set forth four (4) distinct problems with respect to the methamphetamine Guidelines:

a.      First, "as recognized by an emerging chorus of district courts around the country", one problem with the methamphetamine Guidelines is that the Sentencing Commission deviated from its standard empirical approach and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for those crimes. *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *3 (W.D. Virginia August 5, 2019), citing *United States v. Pereda*, 2019 WL 463027 at *3 (D. Colo. Feb 6, 2019) citing *Gall*, 552 U.S. at 46 n.2., and *United States v. Diaz,* No. 11-821, 2013 WL 322243, at *3-6 (E.D.N.Y. Jan 28, 2013)). "This creates Guideline ranges for actual (and ice) methamphetamine that are excessive and not similar to other Guidelines, which are intended to be representative of a ―heartland‖ or ―a set of typical cases embodying the conduct that each guideline describes.‖‖. *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *3 (W.D. Virginia August 5, 2019), citing *Pereda*, 2019 WL 463027, at *4

(citing *United States v. Harry*, 313 F. Supp. 3d at 972; *United States v. Diaz*, 2013 WL 3222243, at *8) (quoting U.S.S.G. Manual § 1A4.13 (1987)).

b. The second problem is that "methamphetamine purity is no longer an accurate indicator of a defendant's role in a drug trafficking conspiracy." *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *3 (W.D. Virginia August 5, 2019). Further noting, "the Commission's assumption regarding the connection between methamphetamine purity and criminal role is divorced from reality… [T]he average purity of methamphetamine today is over 90 percent. This means that the sentencing Guidelines would treat the average individual convicted of a crime involving methamphetamine as a kingpin or leader, even though that simply is not true." *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *3 (W.D. Virginia August 5, 2019), citing *United States v. Ibarra-Sandoval*, 625 F. Supp. 3d at 1255-56.

c. The third problem arises because purity can only be determined after laboratory testing, which occurs "capriciously." *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *4 (W.D. Virginia August 5, 2019), citing *Ibarra-Sandoval*, 265 F. Supp. 3d at 1257.

d. Finally, the *Moreno* court addresses the fact that "courts have questioned the severity of the methamphetamine Guidelines in comparison to other dangerous drugs, including heroin." In *United States v. Harry*, 313 F. Supp. 3d at 973, the court calculated that, all else being equal, the Guidelines range for methamphetamine offenses is more than twice the range of the heroin conspirator. *Moreno*, No. 5:19-CR-002, 2019 WL 3557889, at *4 (W.D. Virginia August 5, 2019), citing *Harry*, 313 F. Supp. 3d at 973.

In summary, the methamphetamine Guidelines lack empirical support, rely on a flawed premise, and result in disparate sentences. For these reasons, another court in this circuit concluded that it's methodology for sentencing in methamphetamine cases will be to treat all

methamphetamine quantities as mixtures. *United States v. Saldana*, No. 1-17-cr-271-1, 2018 U.S. Dist. LEXIS 110790 (W.D.Mich. July 3, 2018). The *Saldana* court referenced an Eastern District of New York case which decided that the advisory ranges in methamphetamine cases should be systematically reduced by one-third until the Guidelines are re-evaluated and adjusted. *Saldana*, 2018 U.S. Dist. LEXIS 110790, citing *Diaz,* 2013 WL 322243 at *18 (E.D.N.Y. Jan 28, 2013). *Saldana* also quoted the Northern District of Iowa stating that court had determined that the appropriate remedy is to õcalculate an alternative Guidelines range, starting with a base offense level determined by reference to the methamphetamine mixture Guidelines and then applying any applicable increases or decreases to that base offense level.ö *Saldana*, 2018 U.S. Dist. LEXIS 110790, citing *Harry*, 2018 WL 2717224, at *5. Additionally, *Saldana* quoted the District of New Mexico which concluded that it would õdetermine whether an enhancement based on purity is appropriate in each case.ö *Saldana*, 2018 U.S. Dist. LEXIS 110790, citing *Ibarra-Sandoval*, 265 F. Supp. 3d at 1256.

For the foregoing reasons, Mr. Estes respectfully requests that this Honorable Court impose a sentence below the advisory Sentencing Guidelines.

Respectfully submitted this 16th day of January, 2020,

> ELLIS LAW FIRM, PLLC on behalf of
> Robert Jessee Estes
>
> BY:    s/Ruth T. Ellis
> Ruth T. Ellis, Esq. [BPR# 009163]
> 550 Main Street, Suite 750
> Knoxville, Tennessee 37902
> Telephone: (865) 546-0100
> Facsimile: (865) 546-0101
> ruth@ellislawtn.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2020, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

BY: s/Ruth T. Ellis_____
Ruth T. Ellis, Esq.